IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WANDA J. HUNT,
      Plaintiff,

vs.                             Case No. 5:06cv51/RS/EMT

JO  ANNE  B.  BARNHART,
Commissioner of the
Social Security Administration,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disabled widow's benefits (DWB) and supplemental security income (SSI).

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

# I.    PROCEDURAL HISTORY

On or about September 26, 2003,[1] Plaintiff filed applications for DWB and SSI under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401 *et seq*., 1381 *et seq*., and alleged an onset of disability on or about May 29, 2002[2] (Tr. 3–4, 70–72).[3]  Plaintiff's applications were denied initially and on reconsideration (Tr. 4, 20–24, 26–29).  On October 28, 2005, following a hearing, an administrative law judge (ALJ) found that Plaintiff was not disabled as defined under the Act at any time through the date of the decision (Tr. 10–19).  On February 7, 2006, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 6–9).  Thus, the ALJ's decision stands as the final decision of the Commissioner and therefore subject to review in this court.  Flage v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998).  This appeal followed.

# II.   FINDINGS OF THE ALJ

On October 28, 2005, the ALJ made several findings relative to the issues raised in this appeal (Tr. 13–19):

1)    Plaintiff meets all of the nondisability requirements for DWB set forth in § 202(e) of the Act.  Plaintiff's prescribed period for DWB begins March 8, 2003 (determined by the date of her husband's death) and ends March 31, 2010.

2)    Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.

3)    The medical evidence indicates Plaintiff has cervical and lumbar degenerative disc disease and bilateral carpal tunnel syndrome, impairments considered "severe,"

---

[1]The Commissioner states Plaintiff filed her applications on September 11, 2003.  Plaintiff states she filed her applications on September 29, 2003.  The transcript reflects that Plaintiff's application was received by the Social Security Administration on September 26, 2003 (Tr. 70).

[2]Plaintiff's SSI application indicates that her alleged disability began on May 12, 2002 (Tr. 70).  A "DIB Review Sheet" and a field office disability report also indicate her alleged onset as May 12, 2002 (Tr. 77, 96).  However, the field office disability report further indicates that Plaintiff stopped working May 29, 2002 (Tr. 97), and other evidence confirms that Plaintiff stopped working on May 29, 2002 (*see, e.g.*,  Tr. 57, 87, 97, 101, 129–30, 144, 152–53).  Moreover, Plaintiff claimed during her hearing that she last worked on May 29, 2002 (Tr. 311).

[3] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on April 25, 2006 (Doc. 5).

based upon the requirements of the Regulations (20 C.F.R. §§ 404.1520 and 416.920).[4]

4)      Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5)      Plaintiff's allegations regarding her limitations are not totally credible.

6)      Plaintiff has no past relevant work.

7)      Plaintiff is an "individual closely approaching advanced age."

8)      Plaintiff has a "limited education."

9)      Transferability of skills is not an issue in the case.

10)      Plaintiff has the residual functional capacity (RFC) to perform the full range of light work.

11)      Based on an exertional capacity for light work and Plaintiff's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.10.

12)      Plaintiff was not under a disability as defined in the Act, at any time through October 28, 2005, the date of the ALJ's decision.

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ( "[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983),

---

[4]In general, the legal standards applied are the same regardless of whether a claimant seeks DWB or SSI. However, separate, parallel statutes and regulations exist for DWB and SSI claims (*see* 20 C.F.R. §§ 404 and 416). Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

*superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

### A.     Personal History

Plaintiff testified at her hearing before the ALJ on May 25, 2005 as follows.  She was fifty-three years old (Tr. 311).  She attended high school until the twelfth grade but never graduated (Tr. 310).  She last worked in May 2002 at a church mission where she sorted and organized clothing received by the mission (Tr. 311).  Prior to that she briefly worked as a florist (Tr. 312).  Presently, Plaintiff cleans her own house but not as 'frantically' as she did at one time (Tr. 313).  Her children help her with housecleaning and with her financial obligations (id.).  Plaintiff noted that it is a financial burden on her family to support her (Tr. 315).

Plaintiff testified she is currently being treated by Kamal H. Zawahry, M.D., and Roger Gamad, M.D., for injuries to her back and hip which she sustained in May 2002 when she fell at work (Tr. 311–12).  She stated she cannot sleep at night due to pain (Tr. 313).  She has to get up "two or three times a night and get a hot bath" to relieve the pain (id.).  She also has to move around constantly when napping or resting (id.).  She takes Soma and Xanax regularly to manage the pain and takes Lortab, a stronger pain medication, at night (id.).  Plaintiff testified that the medication "helps with the pain sometimes" (Tr. 315).  She also testified that she no longer drives because of the medication she takes, although she still has a driver's license (Tr. 314).  Plaintiff further testified

that in addition to back and hip problems she has carpal tunnel syndrome (*id.*).  She indicated that the carpal tunnel prevents her from opening doors and causes her fingers to "swell so big that . . . [she] can't hardly do anything" (*id.*).

### B.    Relevant Medical History

Dr. Gamad, at the Bay Medical Center (Bay Medical), is Plaintiff's long-term primary care physician and treated Plaintiff from December 1992 to April 2003 (Tr. 187–245).[5]  In general, Plaintiff shows a history of chronic anxiety and has been on medication to manage her anxiety from at least 1993 (*see* Tr. 192–243).  On September 29, 1993, Plaintiff presented to Dr. Gamad complaining of pain in her right foot for about two weeks (Tr. 240).  Dr. Gamad opined that is was probably arthritis and/or tendinitis (*id.*).  He prescribed Amoxcil, Ativan, and Ansald (*id.*).  On April 19, 1994, Plaintiff complained of lower back pain accompanied by headaches (Tr. 237).  Dr. Gamad assessed cystitis and chronic anxiety with headache and prescribed Floxin and Ativan (*id.*).  On March 2, 1996, Plaintiff presented complaining of "severe pain in the lateral aspect of the right elbow for about 2 months" (Tr. 231).  Dr. Gamad assessed radial head bursitis and prescribed Lodine, Orthocept, and Halcion (*id.*).  On January 8, 1998, Plaintiff presented to Dr. Gamad complaining of lower back pain and was prescribed Robaxin and Lorcet (Tr. 225).  On March 26, 1999, on a visit for medication refills, Plaintiff complained of more back and shoulder pain (Tr. 218).  Jigish Patel, M.D., prescribed Xanax and Lorcet (*id.*).  On April 23, 2002, Plaintiff presented to Dr. Gamad complaining of severe pain in her neck and shoulders (Tr. 201).  Dr. Gamad prescribed Nubain, Amoxil, and Lortab (*id.*).  He also ordered an x-ray (*id.*).  On May 10, 2002, Plaintiff returned complaining of severe neck pain (Tr. 200).  There was no mention of the x-ray ordered on April 23, 2002 (*id.*).  It appears this x-ray was not taken until late May or early June 2002 (*see* Tr. 201, 199, 150).  On May 10, Dr. Gamad prescribed Duragesic Patch, Lortab, Xanax, and scheduled Plaintiff for physical therapy at HealthPlex (Tr. 200).

Plaintiff's medical records with Dr. Gamad show several MRIs.  On April 26, 2002, a cervical spine MRI revealed "mild degenerative changes [at] C5-6 and C6-7" (Tr. 189, 191).  On

---

[5]Plaintiff's own testimony notwithstanding, the record does not contain evidence of Plaintiff's treatment by Dr. Gamad after April 2003.

May 2, 2002, a cervical spine MRI without contrast showed "mild multi-level degenerative disc disease . . . <u>without</u> spinal canal stenosis or neural foraminal narrowing" (Tr. 188, 190) (emphasis supplied).

Plaintiff was also a patient of the Bay Walk-in Clinic (Bay Clinic) from May through June of 2002 (Tr. 143–53).  On May 29, 2002, she presented to Bay Clinic with complaints of pain in her right knee, forearm, and hip after slipping and falling onto her right side (Tr. 144, 152–53).  Plaintiff had tenderness in her right knee, forearm, and hip (Tr. 153).   X-rays were ordered (*id.*).  Saul Verazain, M.D., prescribed Celebrex and Skelaxin (*id.*).   On the same day, Plaintiff presented to Dr. Gamad at Bay Medical for a checkup (Tr. 199).  Dr. Gamad reported the presence of multiple body contusions in the right hip, knee, and ankle (*id.*).  Dr. Gamad advised Plaintiff to return to Bay Clinic to check the x-rays (*id.*).

On May 31, 2002, Plaintiff returned to Bay Clinic.  X-rays of her right knee, forearm, and hip were negative for fractures (Tr. 145, 150).  Dr. Verazain requested that Plaintiff refrain from working and set a reevaluation appointment (Tr. 151).  On June 5, 2002, Plaintiff returned to Bay Clinic complaining of pain in her hands and hip (Tr. 148).   Her forearm was 'better' (*id.*).   Dr. Verazain ordered an MRI and released Plaintiff to 'light duty' work with no pushing, pulling, repetitive bending, stooping, or climbing, and she was ordered to not to lift over ten (10) pounds (Tr. 148, 149).

On June 12, 2002, Plaintiff returned to Bay Clinic complaining of knee and hip pain (Tr. 145).  She also complained that her pain medications were not working (*id.*).  On examination, she had no swelling in her knee or back and demonstrated normal range of motion (Tr. 144–45).  X-rays revealed no abnormalities (*id.*).  Dr. Verazain continued Plaintiff's pain medications and referred her for an orthopedic evaluation (Tr. 145).  Dr. Verazain also released Plaintiff to light duty work with the same restrictions previously indicated (Tr. 146).

On June 19, 2002, Plaintiff reported to Dr. Gamad at Bay Medical for a refill of pain medication (Tr. 198).   She described continued lower back and left knee pain (*id.*).

Plaintiff was treated by Florida Sports Medicine and Orthopedics physician James M. Talkington, M.D., from June to August of 2002 (Tr. 158–75).   On June 27, 2002, Plaintiff complained of tingling, pain, and weakness in her left wrist (Tr. 170).  She also complained of pain

in her hip (*id.*).  Dr. Talkington reported positive tests for carpal tunnel syndrome in both wrists (Tr. 171).  Dr. Talkington also reported tenderness in Plaintiff's lower back but reported full range of motion (Tr. 171–72).  He ordered an MRI and a conductive nerve study (Tr. 172).  He also put Plaintiff on a <u>total work restriction</u> pending additional rehabilitation, workup, and treatment (*id.*).  On July 31, 2002, Plaintiff returned to Dr. Talkington after having an MRI (Tr. 161–68) and nerve conduction study (Tr. 154–55).  The MRI of the lumbar spine revealed disc degeneration to a variable degree, mild congenital narrowing, and a mild disc bulge (Tr. 165–66).  The MRI of the cervical spine revealed degenerative changes throughout, <u>including</u> mild disc degeneration and mild spinal canal foraminal stenosis (Tr. 163–64).  The nerve study confirmed carpal tunnel syndrome (Tr. 162, 154).  Dr. Talkington referred Plaintiff to a neurologist (Tr. 162).  On the same day, Plaintiff also saw Dr. Gamad for refills of her medication (Tr. 197).  Dr. Gamad reported that Plaintiff "is crying in pain and states that she cannot sleep at night due to her problem" (*id.*).  Dr. Gamad assessed the back pain as secondary to degenerative arthritis (*id.*).

On August 28, 2002, Plaintiff returned to Dr. Talkington with essentially the same symptoms (Tr. 159).  Dr. Talkington made no new findings (*compare* Tr. 159 *with* Tr. 162) and again referred Plaintiff to a neurologist (Tr. 160).  Additionally, Dr. Talkington raised Plaintiff's work restriction as follows: "Plan L Wrist / Forearm:  patient instructed to return in 1 months [sic].  Splint / Cast / Brace: Wrist support.  <u>Light duty</u> until she sees the neurologist, then full" (Tr. 159–60) (emphasis supplied).  No similar note was made under the subheading 'Plan Spine / Hip / Thigh' (Tr. 160).  Notably, in June 2002, Dr. Talkington's 'plan' regarding Plaintiff's lumbar spine was a total work restriction (*see* Tr. 172), but in July and August 2002, his 'plan' simply indicated that Plaintiff should have a neurological consult or evaluation (*see* Tr. 160, 162).

On September 17 and 18, 2002, Plaintiff reported to the Brain and Spine Work Assessment Center (Spine Center) for a functional capacity evaluation (Tr. 176–86).  The Spine Center physical therapist observed that Plaintiff had normal range of motion throughout her back, elbow, forearm, wrists, hip, knees, right shoulder, and ankles, and 4/5 or 5/5 strength in her neck, elbows, forearms, hip, knees, and ankles (Tr.182–84).  Plaintiff's wrist and shoulder strength was limited to 3/5 or 4/5, and she had limited range of motion in her neck and left shoulder (Tr. 182–83). The physical therapist noted that Plaintiff 'self-limited' during the extended sitting and standing tests but opined

that Plaintiff had generally put forth "maximum, consistent effort" (Tr. 176–77).  The report also indicates that Plaintiff failed to complete the kneel, sitting tolerance, and standing tolerance tests (Tr. 179).  The physical therapist noted that Plaintiff "demonstrated physical signs that symptoms were present during floor to waist lifts, standing trunk flexion, and repetitive squatting" (Tr. 177).  "Pain behavior was mildly overt, especially with sitting and standing" (*id.*).  In addition, the evaluation noted the second day's pain rating surpassed the worst reported pain from the first day (Tr. 186).  Based on Plaintiff's performance during testing, the physical therapist concluded Plaintiff could perform full-time work at the "sedentary to light physical demand level" (Tr. 179).  "Floor to waist lifts and [w]aist to overhead" lifts were permitted, but only at the "sedentary level" (*id.*).

On November 13, 2002, Plaintiff presented to Dr. Gamad complaining of leg pain and anxiety (Tr. 195).  "She state[d] that she cannot stand up straight because of severe pain in her back" (*id.*).  Dr. Gamad prescribed Xanax, Ambien, Soma, Lortab, and a Duragesic Patch (*id.*).  On April 14, 2003, Plaintiff presented to Dr. Gamad with severe pain in her left hip and back after prolonged driving (Tr. 192).  Plaintiff asked Dr. Gamad for additional pain medication and Dr. Gamad prescribed Nubain and Phenergan (*id.*).

Dr. Zawahry treated Plaintiff on four occasions between May and October 2003 (Tr. 247–51).  Plaintiff presented to Dr. Zawahry on May 21, 2003 complaining of back and neck pain, ringing ears, and a headache (Tr. 250–51).  He examined Plaintiff and found "no acute distress," "[f]ull range of motion of all extremities[, and] no swelling of joints" (*id.*).  Dr. Zawahry noted tenderness in the lower back area and "paravertebral muscle spasm" (Tr. 251).  Dr. Zawahry diagnosed Plaintiff with acute and chronic back pain syndrome, lumboscacral spine disc disease, chronic neck pain syndrome headache, and chronic arthritis (*id.*).  Plaintiff was placed on muscle relaxants and analgesics and an MRI was ordered (*id.*).  Plaintiff returned on June 23, 2003 with no notable changes (Tr. 249).  On August 27, 2003, Plaintiff returned again, and Dr. Zawahry noted that the "[r]esults of the C-spine and L-S spine MRI shows protrusion of disc disease with spinal canal narrowing" (Tr. 247).[6]  Accordingly, Dr. Zawahry issued "a letter regarding [Plaintiff's] disability

---

[6]Dr. Zawahry's records consist of five pages, total (*see* Tr. 247–51), including a letter dated August 27, 2003 addressed to "whom it may concern," in which he opines that Plaintiff is "disabled" (Tr. 247).  There are no MRI results contained in his records (*see* Tr. 247–51).  When Dr. Zawahry rendered his opinion that Plaintiff was "disabled," he

since this appears to interfere with her ability to do work related activities" (*id.*).  Dr. Zawahry opined that Plaintiff "will not be able to lift more than 5 to 10 pounds and will not be able to do any type of work related activities.  She is considered totally and permanently disabled" (*id.*).  Plaintiff visited Dr. Zawahry on October 23, 2003 with no apparent change in her condition and no reference to her disability (Tr. 248).  The record contains no reports of Plaintiff visiting Dr. Zawahry after October 2003.

Plaintiff was also examined by Kris Lewandowski, M.D., on December 10, 2003.  Dr. Lewandowski reported Plaintiff's 'chief complaint' as "[m]y back is hurting" (Tr. 252).  Dr. Lewandowski's observed that Plaintiff was a "52 years old [sic] female in no visible distress . . . [who] has good communication skills, walks and sits without problems" (*id.*).  He found Plaintiff's back unusually sensitive to light touch, but noted "X rays and MRIs [] do not show significant abnormalities" (Tr. 253).  He also found that Plaintiff ambulates without need for assistive devices and has normal manual dexterity (*id.*).

### C.    Other Information Within Plaintiff's Claim File

On December 15, 2003, Plaintiff presented to psychologist Clell C. Warriner, Ph.D., for a consultative evaluation (Tr. 264–65).  Plaintiff described her problems as "primarily physical with psychological residuals" (Tr. 264).  Dr. Warriner conducted a mental status examination and determined that Plaintiff can do serials, remember objects, and concentrate for brief periods of time without difficulty (Tr. 265).  Dr. Warriner did not find any serious psychological disorder but did diagnose Plaintiff with "Depressive Disorder associated with physical symptoms" (*id.*).  Plaintiff was assigned a Global Assessment of Functioning (GAF) score of 82 (*id.*).[7]

---

appears to have merely parroted the findings contained in Dr. Talkington's file, insofar as they relate to Plaintiff's July 2002 MRI (*compare* Tr. 163–66, *with* Tr. 247).  The July 2002 MRI of Plaintiff's lumbar spine reveals disc degeneration to a variable degree, mild congenital narrowing, and a mild disc bulge (Tr. 165–66).  The MRI of the cervical spine revealed degenerative changes throughout, including mild disc degeneration and mild spinal canal foraminal stenosis (Tr. 163–64).  Dr. Zawahry's letter, after mechanically repeating these MRI findings, goes on to diagnose Plaintiff as "totally and permanently disabled" (Tr. 247).  However, Dr. Talkington <u>and</u> Kris Lewandowski, M.D., reviewed the same MRIs and did not find Plaintiff disabled (Tr. 159–60, 162, 253).

[7]A GAF score of 81 to 90 reflects "absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)."  *See* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000)

Plaintiff was evaluated by Edward W. Holifield, M.D. (Tr. 256–63).  On January 2, 2004, he completed a Physical Capacity Evaluation form (Tr. 263).  Dr. Holifield found that Plaintiff could sit, stand, or walk six hours in an eight-hour workday; she could frequently[8] lift up to ten pounds; she could occasionally[9] lift up to twenty pounds; she could use her hands for repetitive grasping, pushing, pulling, and fine manipulation; she could use her feet for repetitive movements, such as operating foot controls; she could stoop, kneel, crouch, crawl, balance, and climb ramps or stairs without limitation; she could reach in all directions, conduct gross and fine manipulation, and feel items without limitation; and she had no visual, communicative, or environmental limitations (Tr. 257–60).

Plaintiff was also evaluated by Tom Peele, M.D. (Tr. 280–87).  On March 4, 2004, he completed a Physical Capacity Evaluation form (Tr. 287) and reached the same conclusions as Dr. Holifield (*compare* Tr. 280–87 *with* Tr. 256–63).  Additionally, Dr. Peele noted that while Plaintiff had full range of motion, she continued to experience pain (Tr. 281–82).

## V.    DISCUSSION

Plaintiff generally raises two issues on appeal.  First, Plaintiff contends the ALJ erred by failing to adequately develop the record.  Specifically, Plaintiff alleges that the ALJ (1) misstated the medical opinion of Dr. Talkington; (2) misstated the results of the Spine Center's functional capacity evaluation; (3) improperly discounted the opinions of Dr. Zawahry, a treating physician; (4) failed in his duty to re-contact Dr. Zawahry; and (5) failed to obtain the testimony of a vocational expert.  Second, Plaintiff alleges the ALJ failed to apply the proper Eleventh Circuit three-part pain standard.  Plaintiff claims "[f]ailure to apply the correct legal standards when reviewing disability claims is ground not for remand but for reversal" (Doc. 7 at 6) (citing <u>Lamb v. Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1989)).

### A.       Full and Fair Administrative Record

_____

(DSM-IV-TR).

[8]"Frequently" means occurring 1/3rd to 2/3rds of an 8-hour workday (cumulative, not continuous).

[9]"Occasionally" means occurring from very little up to 1/3rd of an 8-hour workday (cumulative, not continuous).

The ALJ has a duty to fully and fairly develop the record. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997); Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988); Cowart v. Schweiker, 662 F.2d 731, 735–36 (11th Cir. 1981).   The Social Security disability benefits process is inquisitorial rather than adversarial, Sims v. Apfel, 530 U.S. 103, 110–11, 120 S. Ct. 2080, 2085, 147 L. Ed. 2d 80 (2000); Crawford & Co. v. Apfel, 235 F.3d 1298, 1304 (11th Cir. 2000), and is informal.  Richardson v. Perales, 402 U.S. 389, 400–01, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971); Kendrick v. Shalala, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. § 404.900(b).  With informality comes a duty to develop a complete record as is done by European magistrates.  *Id.*  It is well established in the Eleventh Circuit that the ALJ has an affirmative duty to develop a full and fair record, which exists whether or not the plaintiff is represented by counsel.  Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); Lucas v. Sullivan, 918 F.2d 1567, 1573 (11th Cir. 1990); Smith v. Bowen, 792 F.2d 1547, 1551 (11th Cir. 1986); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retain counsel, and even if the claimant is represented by counsel, as in this case.  *See* Cowart, 662 F.2d at 735–36.  Remand due to a failure to develop the record is only warranted where such a failure is unfair or prejudicial. *See* Brown, 44 F.3d at 935.

### (1)      Misstating Dr. Talkington's Opinion

First, Plaintiff claims the ALJ misrepresented Dr. Talkington's assessment by making it appear as if his light duty assignment following Plaintiff's prescribed treatment for carpal tunnel syndrome was for Plaintiff's whole body and not just her hands and wrists (*see* Doc. 7 at 8). Plaintiff argues that Dr. Talkington's assessment plan is separated into two parts: the first dealing with Plaintiff's hands and wrists, and the second dealing with Plaintiff's back pain (*see id.*). Essentially Plaintiff's argument boils down to whether Dr. Talkington's restoration of Plaintiff's capacity to light duty related only to 'Wrist / Forearm' limitations and did not include 'Spine / Hip / Thigh' limitations (*see* Tr. 159–60).  Plaintiff's argument is semantical and unconvincing.  Dr. Talkington was treating Plaintiff for carpal tunnel and ailments to her lower back and neck.  If Dr. Talkington believed Plaintiff was incapable of performing light-duty work due to back-related impairments, it is reasonable to believe he would not have released Plaintiff to light duty work at all.  Moreover, Dr. Talkington specifically indicated in August 2002 that Plaintiff was released to

"[l]ight duty until she sees the neurologist, then full," and the record establishes that Plaintiff was being referred to a neurologist only for back-related impairments (*see, e.g.*, Tr. 160, 162).  Thus, when read in context, it is clear Dr. Talkington believed Plaintiff was capable of light duty work, as it related to both her wrist and back impairments.  Accordingly, the ALJ did not misstate Dr. Talkington's opinion by observing "Dr. Talkington reported . . . [Plaintiff] was capable of at least light work and a functional capacity evaluation done September 2002 supports this [conclusion]" (Tr. 16; *see also* Tr. 159 ("Wrist / Forearm: . . . Brace: Wrist support.  Light duty until she sees the neurologist, then full . . . Spine / Hip Thigh: Additional Medical Evaluation: neurology.")).

## (2)    Misstating Results of Spine Center's Evaluation

Plaintiff also argues the ALJ misstated the results of the Spine Center's September 17–18, 2002 evaluation.  Plaintiff argues the ALJ ignored the parts of the Spine Center's assessment that indicated Plaintiff was only capable of sedentary work (Doc. 7 at 9).  Plaintiff alleges the "omission or misstating of evidence favorable to [Plaintiff] is a failure to properly develop the record as a whole" (*id.* at 10).  As previously discussed the ALJ has a duty to fairly develop the record, however, remand due to a failure to develop the record is only warranted where such a failure is unfair or prejudicial. *See* Brown, 44 F.3d at 935 (11th Cir. 1995).  The ALJ did not misstate the Spine Center's evaluation.  The ALJ observed that the Spine Center's evaluation supported Dr. Talkington's conclusion that Plaintiff could return to full duty work after she saw a neurologist (Tr. 15, 16).  The Spine Center's evaluation is set out on pages 176 through 186 of the record.  The evaluation found Plaintiff had normal range of motion throughout her back, elbow, forearm, wrists, hip, knees, right shoulder, and ankles, and 4/5 or 5/5 strength in her neck, elbows, forearms, hip, knees, and ankles (Tr. 182–84).  The evaluation noted Plaintiff's wrist and shoulder strength was limited to 3/5 or 4/5, and she had a limited range of motion in her neck and left shoulder (Tr. 182–83), but concluded Plaintiff could perform full-time work at the "sedentary to light physical demand level" (Tr. 179) (emphasis supplied).  Finally, the evaluation noted "[f]loor to waist lifts and [w]aist to overhead" lifts were permitted, but only at the "sedentary level" (*id.*).  The Spine Center evaluation, however, also noted Plaintiff "self-limited" during her examination (*id.*).  Nevertheless, the evaluation determined Plaintiff put forth maximum effort (Tr. 176).  The ALJ's conclusion that Plaintiff can perform light-duty work is not contradicted by the Spine Center's evaluation or by Dr.

Talkington's conclusion.  Furthermore, the ALJ's determination is adequately supported by the record.  Plaintiff's physical abilities were subsequently assessed in two physical capacity evaluations (Tr. 256–63, 280–87).  Both physical capacity evaluations determined Plaintiff was capable of light work[10] (*id.*).  Accordingly, the ALJ did not improperly consider the Spine Center's evaluation.

### (3)    Improperly Discounting Dr. Zawahry's Opinion

Plaintiff claims the ALJ erred by assigning little weight to treating physician Dr. Zawahry's opinion that Plaintiff was totally disabled, would not be able to lift more than five to ten pounds, and would not be able to do any type of work related activities.  Dr. Zawahry reached his opinion after examining Plaintiff four times and reviewing her MRIs, but no new MRIs are contained in Dr. Zawahry's records.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991);  Sabo v. Commissioner of Social Security,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent

---

[10]Light work is defined in 20 C.F.R. § 404.1567(b) as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

evidence of a claimant's impairments.  *See* Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also* Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion.  *See* Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the providence of the Commissioner.  20 C.F.R. § 404.1527(e).  The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.  The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the

entire record to determine whether such opinions are supported by the record.  SSR 96-5p.  In Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do any work, and the physician subsequently wrote a letter saying the claimant was completely disabled.  To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Additionally, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability.  20 C.F.R. § 404.1566. For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

Here the ALJ, although not explicitly, found good cause to discount Dr. Zawahry's opinion. See Phillips, 357 F.3d at 1240–41 (employing a three-step analysis).  First, the ALJ reviewed Dr. Zawahry's assessments, but he found them unconvincing because Dr. Zawahry did not enclose the MRI reports he purported to rely on in reaching his conclusion that Plaintiff was permanently and totally disabled (Tr. 15–16).  Second, although MRIs from July 2002 are contained in the record, those MRIs do not support Dr. Zawahry's findings (see Tr. 161–68).  Furthermore, the July 2002 MRIs were reviewed by Dr. Talkington (Tr. 159–60) and Dr. Lewandowski (Tr. 252–53), and neither found Plaintiff totally disabled based on the MRIs (Tr. 159–60, 252–53).  In fact, Dr. Talkington restored Plaintiff to a light duty capacity pending the outcome of a neurological assessment, and Dr. Lewandowski noted the "MRIs [] do not show significant abnormalities" (Tr. 159, 253).  Third, the ALJ noted that Dr. Zawahry's physical examinations of Plaintiff revealed that she was "essentially normal with only tenderness to the touch in the back and [] subjective reports

of pain" (Tr. 16).  Thus, Dr. Zawahry's own medical notes do not support a finding of disability.

Accordingly, the ALJ did not err in failing to assign controlling weight to Dr. Zawahry's opinion

because good case to do otherwise has been shown.

When a treating physician's opinion does not warrant controlling weight, the ALJ must still

consider the opinion in reaching his decision.  *See* 20 C.F.R. § 404.1527(2).  Generally, a treating

physician's opinion is entitled to more weight than a consulting physician's opinion.  *See* Wilson,

734 F.2d at 518; *see also* 20 C.F.R. § 404.1527(d)(2).  In the instant case, there is ample support in

the record to assign little weight to Dr. Zawahry's opinion that Plaintiff is "totally and permanently

disabled."  Dr. Zawahry only examined Plaintiff on four occasions over a five-month period (Tr.

247–51).  On Plaintiff's third visit, Dr. Zawahry rendered a disability opinion, but on Plaintiff's

fourth visit absolutely no mention was made of Plaintiff's 'disability' and no reference was made

to the condition of Plaintiff's back (Tr. 248).  As already discussed, Dr. Zawahry's conclusions are

not supported by the record as a whole.  Dr. Talkington, another treating physician, and Dr.

Lewandowski, a consulting physician, reached opposite conclusions on the basis of the same

evidence.  The Spine Center's evaluation also reached an opposite result, consistent with Dr.

Talkington's and Dr. Lawandowski's opinions, that Plaintiff could return to light-duty work.  Two

independent physical capacity assessments of Plaintiff in 2004 revealed Plaintiff was capable of

functioning at the light-duty level.  Moreover, Bay Clinic reports from just weeks after Plaintiff's

allegedly debilitating accident also restored Plaintiff to light-duty work.  In short, Dr. Zawahry's

opinion stands alone as the only opinion finding Plaintiff totally and permanently disabled.  Dr.

Zawahry is a neurologist, and Plaintiff was referred to him by Dr. Talkington for a neurological

exam (*see* Tr. 160).  However, all of Dr. Zawahry's reports consistently indicate that Plaintiff has

no neurological problem — a finding that does not support Dr. Zawahry's opinion that Plaintiff is

disabled (Tr.  248, 249, 251).  Finally, the only other factor that tends to support Dr. Zawahry's

opinion is Plaintiff's own subjective testimony.  This factor standing alone is insufficient to

contradict the ALJ's determination that Dr. Zawahry's opinion should be assigned little weight in

light of the ample evidence to the contrary.

Accordingly, the ALJ did not err in discounting Dr. Zawahry's opinion and assigning it little

weight in analyzing Plaintiff's claim.  The ALJ provided specific reasons with substantial support

in the record; and, as explained above, the determination of whether Plaintiff is disabled is reserved to the Commissioner.

### (4)    Failure to Re-Contact Dr. Zawahry

Plaintiff asserts the ALJ failed to properly develop the record because he did not contact Dr. Zawahry to determine if there were other MRIs which might support Plaintiff's claim (Doc. 7 at 11). Plaintiff claims that it is unclear whether Dr. Zawahry was referring to the July 2002 MRIs (Tr. 161–68) or to other MRIs absent from the record (Doc. 7 at 11) when he concluded that Plaintiff was disabled. Plaintiff's argument is flawed. Plaintiff's letter to the Appeals Council indicates the MRIs Dr. Zawahry reviewed "were contained in the record" (Tr. 303). In the immediately preceding paragraph, Plaintiff refers to the July 2002 MRIs contained in Dr. Talkington's records (*id.*). Plaintiff also attached one of the July 2002 MRIs to the letter (Tr. 305–06). Thus, it does not appear to this court that any additional MRIs existed. But even if they did, a remand is warranted only if the ALJ's failure to obtain them was unfair or prejudicial. Moreover, although the ALJ is "bound to make every reasonable effort to obtain from the claimant's treating physician(s) all the medical evidence necessary to make a determination," the burden is on Plaintiff to prove that she is disabled. *See* Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002).

Plaintiff has not established that any additional MRIs would have changed the administrative result, as the ALJ had ample evidence in the record to reach his conclusions. Specifically, the file contains MRIs obtained during the time frame relevant to Plaintiff's claim, which were thoroughly reviewed and discussed by the ALJ. Accordingly, the ALJ did not err in failing to contact Dr. Zawahry to determine if any other MRIs existed.

### (5)    Failure to Obtain a Vocational Expert

Plaintiff also claims the ALJ failed to develop the record by not obtaining the testimony of a vocational expert (Doc. 7 at 16–17). Plaintiff did not present this argument during her hearing or to the Appeals Council; it is raised for the first time in the instant appeal. During Plaintiff's hearing, Plaintiff's counsel independently asserted "I believe under . . . Grid 201, we feel this claimant should Grid out under that Grid" (Tr. 315). Thus, Plaintiff's counsel apparently agreed that the use of the Grids was proper and urged the ALJ to find Plaintiff disabled based on the Grids. In Plaintiff's brief to this court, however, Plaintiff takes a different position. After explaining the case law regarding

the use of a vocational expert, Plaintiff's entire argument as to the ALJ's error in relying on the grids is as follows: "The evidence clearly demonstrates that [Plaintiff] meets this criteria [and therefore exclusive reliance on the Grids was improper]. She has alleged nonexertional limitations and has severe impairments and pain which would be considered to be moderate or worse. The need for vocational expert testimony was clear from the outset and the ALJ failed in his duty to obtain this to fully develop the record." (Doc. 7 at 16–17).

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Foote, 67 F.3d at 1559. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Id. at 1558; Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines, also known as the grids. Foote, 67 F.3d at 1558. Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Foote, 67 F.3d at 1559; Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, i.e., impairments that place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." Walker v. Bowen, 826 F.2d 996, 1002–03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Foote, 67 F.3d at 1559; Chester v. Bowen, 792 F.2d 129, 132 (11th Cir. 1986); see also MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (when nonexertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the

national economy.  *See* <u>Allen</u>, 880 F.2d at 1202; <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981), *overruled on other grounds*.

In this case, the ALJ's use of the grids was proper.  First, the ALJ found Plaintiff has the "capacity to perform the full range of light work" (Tr. 18).  The ALJ's determination that Plaintiff can perform light work is based on the opinions of Dr. Talkington and the Spine Center's evaluation. The ALJ's determination is also supported by other evidence in the record, specifically by reports from Bay Clinic and from Dr. Lewandowski.  Thus, the ALJ's finding that Plaintiff could perform a full range of light work has substantial support, and because Plaintiff could perform a full range of work at that given level, use of the grids was appropriate.  *See* <u>Sryock v. Heckler</u>, 764 F.2d 834, 836 (11th Cir. 1985) (grids inappropriate if limitations prevent a wide range of gainful employment at the designated level).  Second, although use of the grids is inappropriate in cases involving non-exertional impairments, such as pain, *see* <u>Cowart v. Schweiker</u>, 662 F.2d 731, 736 n.1 (regulations do not apply in cases where claimant alleges nonexertional kinds of impairments), here Plaintiff's allegations of pain were properly discredited by the ALJ.  *See infra* Part V(B).  Accordingly, the ALJ did not err in his use of the grids.

In conclusion, this court finds that the record is adequately developed, there was no need for further development, and the ALJ did not err regarding his duty to fully and fairly develop the record.[11]

**B.      Eleventh Circuit Pain Standard**

The ALJ found that Plaintiff "retains the residual functional capacity for full range of light work activity . . .based on the objective and clinical findings . . . [showing Plaintiff] has only mild degenerative disc disease in the neck and back and mild bilateral carpal tunnel syndrome not capable of causing the amount of pain and restrictions [Plaintiff] testified to [sic]" (Tr. 16).  Additionally, the ALJ found that Plaintiff's allegations regarding her limitations are not totally credible (Tr. 16, 18).  Plaintiff claims the ALJ did not properly apply the Eleventh Circuit pain standard (Doc. 7 at

---

[11]Curiously, Plaintiff's brief concludes "Ms. Hunt's entitlement is clear from the record, [and] this Court should reverse and remand this case to the Commissioner with instructions to award benefits" (Doc. 7 at 20), but at the same time Plaintiff asserts that the record is inadequately developed (and thus, anything but clear).

17) and improperly discounted her subjective complaints in light of the objective medical evidence (*id.* at 17–19).

Pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929.  In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216.  The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)).  However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[I]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . .  Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor v. Bowen, 786 F.2d at 1054; Holt v. Sullivan, 921 F.2d at 1223.  "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).  The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Dep't. of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[12]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." Hand, 761 F.2d at 1548–49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884  (11th Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence

---

[12]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

In the instant case, Plaintiff argues the ALJ did not properly apply the Eleventh Circuit pain standard. Although the ALJ did not specifically cite the Eleventh Circuit pain standard, he referred to and applied 20 C.F.R. § 404.1529 in addressing Plaintiff's subjective complaints (Tr. 16); thus, the ALJ did not err. *See* <u>Wilson</u>, 284 F.3d at 1226. Moreover, if the ALJ's findings of fact "leave no doubt as to the appropriate result" under the standard, the fact that the ALJ does not explicitly refer to the standard is of no consequence. *See* <u>Landry</u>, 782 F.2d at 1553–54. Here, as in <u>Landry</u>, the ALJ's findings of fact leave no doubt as to the appropriate result under the Eleventh Circuit standard. First, the ALJ found evidence of an underlying medical condition; namely, the ALJ acknowledged the existence of "objective and clinical findings . . . [showing that Plaintiff has] mild degenerative disc disease in the neck and back and mild bilateral carpal tunnel syndrome" (Tr. 16). The ALJ also found Plaintiff's impairments to be "severe" within the meaning of the Act (Tr. 18).

Second, the ALJ made findings indicating that there was neither objective medical evidence confirming the severity of Plaintiff's alleged pain, nor an objectively determined medical condition of such severity that could reasonably be expected to give rise to the alleged pain. Specifically, the ALJ found Plaintiff's medical condition, as determined by reference to objective medical reports, was "not capable of causing the amount of pain and restrictions" Plaintiff claims (Tr. 16). The ALJ found Dr. Talkington's August 28, 2002 report removing Plaintiff from total work restriction and instructing her that she can return to "[l]ight duty until she sees the neurologist, then full [duty]" (Tr. 159–60), as compelling evidence that Plaintiff's condition was not totally disabling. The ALJ also cited a September 2002 evaluation by the Spine Center finding that Plaintiff had normal range of motion throughout her back, elbow, forearm, wrists, hip, knees, right shoulder, and ankles, and 4/5 or 5/5 strength in her neck, elbows, forearms, hip, knees, and ankles (Tr. 182–84). This evaluation also revealed that Plaintiff's wrist and shoulder strength was limited to 3/5 or 4/5, and she had a limited range of motion in her neck and left shoulder (Tr. 182–83), but resulted in a finding that Plaintiff could perform full-time work at the "sedentary to light physical demand level" (Tr. 179). Further, on June 12, 2002, Plaintiff was examined by Dr. Verazain at Bay Clinic (Tr. 145). Dr. Verazain reported she had no swelling in her knee or back and demonstrated normal range of motion

(*id.*). X-rays conducted on that day also revealed no abnormalities (*id.*). Accordingly, Dr. Verazain released Plaintiff to light duty work with limited restrictions (Tr. 146). On December 10, 2003, Dr. Lewandowski observed Plaintiff to be in no visible distress (Tr. 252). He found Plaintiff's back unusually sensitive to light touch, but noted "X rays and MRIs [] do not show significant abnormalities" (Tr. 253). He also found that Plaintiff ambulates without need for assistive devices and has normal manual dexterity (*id.*). Thus, the ALJ's findings are substantially supported by the record.

Plaintiff claims the ALJ failed to state a reasonable basis for rejecting her testimony about pain. Plaintiff attempts to buttress her argument, and show her pain, by citing her primary-care physician's numerous notes of her arthritis; chronic anxiety; acute anxiety; headaches; depression; nervousness; and pain in her foot, back, pelvis, neck, and shoulders made over the nine-year period beginning in 1993 and ending in 2002. Plaintiff argues that Dr. Gamad's July 2002 note: "[t]he patient is crying in pain and states she cannot sleep at nights due to the problem" is especially illustrative of Plaintiff's pain. However, Dr. Gamad's notation is merely a record of Plaintiff's subjective complaints of pain.

The ALJ may properly find subjective complaints of pain not credible if he articulates reasons that are supported by the record. *See* Jones, 941 F.2d at 1532. Here, the ALJ articulated the inconsistencies on which he relied in discrediting Plaintiff's complaints. Specifically, the ALJ found Plaintiff's assertions of pain to be inconsistent with Dr. Talkington's and the Spine Center's assessments finding Plaintiff capable of preforming light work activity (Tr. 15–16, *see* Tr. 159–60, 179). Although the ALJ did not make specific reference to Dr. Gamad's notes of Plaintiff's complaints, Plaintiff claimed that her disability began on or about May 29, 2002. Dr. Gamad's notes begin in 1993, ten years prior to the date Plaintiff claims she became disabled, and they continue through 2002. Dr. Gamad's notes from July 2002 essentially echo Plaintiff's testimony from her hearing. The ALJ considered and specifically rejected this evidence during his analysis of Plaintiff's claim of pain (Tr. 16). The ALJ found that the objective medical evidence indicates that Plaintiff's condition is not of such severity as to cause the amount of pain and restrictions claimed by Plaintiff (*id.*). Accordingly, the ALJ properly discounted Plaintiff's subjective complaints and articulated sufficient reasons, supported by the record, for doing so.

## VI.      Conclusion

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 5ᵗʰ day of February 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**